UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| SHAWNA ARNESON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRED HUTCHINSON CANCER CENTER,<br><br>Defendant. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>Action Filed: December 8, 2023<br>Complaint Served: Not yet served |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Fred Hutchinson Cancer Center ("Defendant" or "Fred Hutch"), hereby removes the action filed by Plaintiff Shawna Arneson ("Plaintiff"), individually and on behalf of all others similarly situated, in the Superior Court of Washington for King County, Case No. 23-2-24266-1, to the United States District Court for the Western District of Washington, Seattle Division. In support of removal, Fred Hutch states as follows:

**I.      BACKGROUND**

1.      On December 8, 2023, Plaintiff, individually and on behalf all others similarly situated, filed a Class Action Complaint (the "Complaint") against Defendant Fred Hutch in the Superior Court of Washington for King County, Case No. 23-2-24266-1 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action.

2. Plaintiff alleges that on or about November 19, 2023, Defendant "detected an incident in which unauthorized cybercriminals accessed information on its clinical network (the 'Data Breach.')" including "Private Information belonging to the Plaintiff and Class members." (Compl. ¶¶ 3, 23.) Plaintiff alleges that "cybercriminals claim that information for 800,000 patients was stolen in the Data Breach—including names, social security numbers, medical and insurance information, lab results and more." (*Id.* ¶¶ 4, 25.) Plaintiff alleges as a result of the Data Breach she "and the Class members suffered injuries including, but not limited to:

- Lost or diminished value of their Private Information;
- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;
- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;
- Charges and fees associated with fraudulent charges on their accounts; and
- The continued and increased risk of compromise to their Private Information …."

(*Id.* ¶ 9.)

3. Based on these allegations, Plaintiff asserts four causes of action against Fred Hutch: (1) negligence; (2) breach of implied contract; (3) unjust enrichment; and (4) violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq*. (*See generally*, Compl.)

4. Plaintiff purports to bring these four causes of action on behalf of themselves and a class defined as "All persons in the United States whose Private Information was accessed in the Data Breach (the 'Class')." (Compl. ¶ 99.)

## II. REMOVAL IS TIMELY

5. Plaintiff filed this lawsuit on December 8, 2023, and has not yet served Fred Hutch with a copy of the summons and Complaint. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by Fred Hutch are attached hereto as

2

exhibits. Specifically, attached to this Notice of Removal are true and correct copies of: (1) the operative Complaint (**Exhibit A**); (2) Order Setting Case Schedule (**Exhibit B**); (3) Case Info Cover Sheet and Area Designation (**Exhibit C**); (4) Summons (**Exhibit D**); (5) Case Information Cover Sheet (**Exhibit E**); and (6) the docket in the State Court Action (**Exhibit F**).

6. No other pleadings or substantive filings (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

7. This removal is timely because Fred Hutch filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

### III.    THIS COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA") (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant. *See* 28 U.S.C. § 1332(d).

10. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Fred Hutch may remove the State Court Action to federal court under CAFA because this case is (i) pled as a putative class action, (ii) with over 100 proposed putative class members, (iii) that involves a minimal diversity of citizenship among the parties, and (iv) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

### A. The Complaint is pled as a putative class action.

11.  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

12.  Plaintiff seeks class certification under Washington Superior Court Civil Rule 23. (Compl. ¶¶ 99-100.) Thus, the CAFA requirement that the Complaint is pled as a class action is satisfied. *See* 28 U.S.C. § 1332(d)(1)(B).

### B. Plaintiff alleges a putative class with over 100 proposed members.

13.  Plaintiff alleges that "cybercriminals claim that the information for 800,000 patients was stolen in the Data Breach." (Compl. ¶¶ 4, 25.) Plaintiff further alleges that "the number of affected individuals may be as high as 800,000." (*Id.* ¶ 101.)

14.  Accordingly, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

### C. Minimal diversity of citizenship exists.

15.  Under CAFA, federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).

16.  <u>Defendant's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (concluding that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or where it has its "nerve center"). "[I]n practice it should normally be the place where the corporation maintains its headquarters[.]" *Id.* at 93.

17.  As alleged in the Complaint, Fred Hutch is a Washington corporation with its principal place of business in Washington. (Compl. ¶ 12.) Thus, Fred Hutch is a citizen of Washington.

18.  <u>Plaintiff's Citizenship</u>. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id. See also Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode"). "The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Here, Plaintiff alleges that she is a citizen of Washington. (Compl. ¶ 11.)

19. <u>The Putative Class's Citizenship.</u> Plaintiff seeks to represent the following nationwide class of persons: "All persons in the United States whose Private Information was accessed in the Data Breach." (*Id.* ¶ 99.)

20. Fred Hutch has sent notifications of the Data Incident—a process which is not yet complete—to people with addresses in all 50 states, the District of Columbia, and internationally.

21. Moreover, the data at issue includes addresses for individuals treated at Fred Hutch as well as those treated at other facilities that Fred Hutch has relationships with throughout the country. Thus, members of the putative class are located in all fifty states, and many are more likely than not citizens of a state other than Washington.

22. Because Fred Hutch and at least one member of the putative class are citizens of different states, CAFA's minimal diversity requirement is met in this case. *See* 28 U.S.C. § 1332(d)(2)(A).

23. <u>No CAFA Exceptions Apply</u>[1]. Plaintiff may argue removal is improper because of either or both of two related CAFA exceptions: (1) the local controversy exception or (2) the home state exception (sometimes called the "home state controversy exception"). Neither exception applies here.

24. "Congress provided exceptions to CAFA jurisdiction [] to allow truly *intrastate* class actions to be heard in state court." *Adams v. West Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (emphasis in original).

25. The party objecting to removal bears the burden of showing that a CAFA exception applies. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("Consistent with the plain language of the state and this well-established rule, we conclude that although the removing party bears the initial burden of establishing federal jurisdictions under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B).").

26. Under the "home state" exception to CAFA, "the district court 'shall' decline to exercise jurisdiction where 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Id.* (*citing* 28 U.S.C. § 1332(d)(4)(B)). Similarly, the "local controversy exception" requires a district court to decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one "significant defendant" is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing. 28 U.S.C. § 1332(d)(4)(A)(i). "For either exception to apply, the party seeking remand must show at a minimum, and by a preponderance of the evidence, that at least two-thirds of the class are [Washington] citizens and that a defendant is a [Washington] citizen." *Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 718 (N.D. Cal 2023). *See also*

---

[1] Because CAFA's exceptions do not affect the Court's original jurisdiction under § 1332(d)(2), and because proving any exception could apply is the burden of the party seeking remand, Fred Hutch only briefly addresses the mandatory exceptions to CAFA jurisdiction, and reserves all rights to raise additional or other arguments regarding any CAFA exceptions.

6

*Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013) (Plaintiffs "must [ ] establish that greater than two-thirds of prospective class members were citizens of [Washington] as of the date the case became removable").

27. Here, the CAFA exceptions do not apply.

28. To the contrary, ten class actions have been filed stemming from the Data Incident—many in federal court. *See Doe v. Fred Hutchinson, et al.*, filed on December 10, 2023 under Case No. 2:23-cv-01893 (W.D. Wa.); *Irvine v. Fred Hutchinson Cancer Center,* filed on December 11, 2023 under Case No. 23-2-24438-9 (Superior Ct., King County); *Beach v. Fred Hutchinson Cancer Center, et al.*, filed on December 18, 2023 under Case No. 23-2-24597-1 (Superior Ct., King County); *Reed v. Fred Hutchinson Cancer Center*, filed on December 13, 2023 under Case No. 23-2-24737-0 (Superior Ct., King County); *Ayers v. Fred Hutchinson Cancer Center*, filed on December 14, 2023 under Case No. 2:23-cv-01916 (W.D. Wa.); *Aleshire v. Fred Hutchinson Cancer Center*, filed on December 14, 2023 under Case No. 23-2-24742,6 (Superior Ct., King County); *Hunter v. Fred Hutchinson Cancer Center*, filed on December 26, 2023 under Case No. 2:23-cv-01988 (W.D. Wa.); *Holz v. Fred Hutchinson Cancer Center*, filed on December 28, 2023 under Case No. 2:23-cv-01998 (W.D. Wa.); and *Ristvet v. Fred Hutchinson Cancer Center*, filed on January 5, 2024 under Case No. 2:24-cv-00019 (W.D. Wa.).

29. In fact, effectively conceding that matters related to the Data Incident are nationwide in scope and should be in federal court, many of plaintiffs' counsel that filed initial actions in state court (including this action) have now filed federal lawsuits alleging jurisdiction under CAFA. On December 29, 2023, plaintiffs' counsel in the four pending federal lawsuits sought consolidation of those cases and the appointment of interim class counsel to lead the consolidated action. *See Doe v. Fred Hutchinson Cancer Center, et al.*, 2:23-cv-01893-MLP, Dkt. # 5, *Unopposed Joint Motion to Consolidate Related Cases*.

30. The CAFA exceptions are inapplicable under these circumstances. *See Beasley v. Lucky Stores, Inc.*, 379 F. Supp. 3d 1039, 1043 (N.D. Cal. 2019) *citing* S. REP. NO. 109-14, at 40-41 (2005) (explaining that "if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not

qualify for [the local controversy] exception, even if it were brought only as a single-state class action.").

31.     Second, Plaintiff may not rely on proposes class members' last-known addresses to determine state citizenship, and would not be able to determine their state citizenship without speaking directly to each of them. *See Mondragon*, 736 F.3d at 884 ("That [someone] may have a residential address in [a state] does not mean that person is a citizen of [that state]."); *Kanter*, 265 F.3d at 857 (explaining domicile requires residence plus intent); *Lew*, 797 F.2d at 750 (listing a number of factors, none of which are dispositive, to determine a person's domicile).

32.     Fred Hutch is notifying all individuals who Fred Hutch has in its systems of the incident—regardless of their last date of treatment or when Fred Hutch obtained their addresses—and is sending notification letters to individuals with addresses <u>in all 50 states</u>.

33.     Even as to patients who provided Washington addresses to Fred Hutch for their treatment, Fred Hutch has been treating cancer patients for many years, and a great many patients who provided Washington addresses likely are not, or are no longer, citizens of Washington State.

34.     Many patients likely have moved and not notified Fred Hutch of their change of address or updated their address in a national database.

35.     Fred Hutch also does not verify the addresses it receives from its patients (e.g., by confirming with a piece of mail or driver's license), nor does it verify the addresses of persons who were treated at institutions with which Fred Hutch has a relationship (e.g., those persons whose information was sent to Fred Hutch to perform laboratory testing) from all over the country.

36.     Fred Hutch provides cutting edge cancer and infectious disease treatment, and people routinely travel from out of state to Fred Hutch to obtain services while staying locally—and thus using a Washington address—for the length of the treatment.

37.     Moreover, Fred Hutch's Financial Assistance Program offers reduced cost or free care to Washington residents. To receive financial assistance, an individual presenting for treatment must have a Washington address. Given this requirement, many out-of-state citizens who seek charity care from Fred Hutch likely use in-state addresses at which they do not intend to remain.

8

38.     Finally, there are likely deceased individuals whose information Fred Hutch has on its systems. A "dead person's prior citizenship is irrelevant when determining whether the controversy 'is between . . . citizens of different States.'" *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir. 2020) (quoting 28 U.S.C. § 1332(a)). It is impossible to know precisely how many deceased persons are included in the putative class without an individual inquiry.

39.     In these circumstances, Plaintiff would not be able to meet her burden of proving that more than two-thirds of the putative class are Washington citizens.

40.     For example, the District of Arizona recently held that remand was improper in a similar case against a medical center that was the target of a cyberattack and data breach because the plaintiffs could not meet their burden of showing that two-thirds of the proposed class—people who were treated at the medical center—were residents of the state in which the case was brought, and that "last known mailing address is *not enough* to establish domicile for exception purposes." *Johnson v. Yuma Regional Med. Ctr.*, 2:22-cv-01061-SMB, 2023 U.S. Dist. LEXIS 181993 (D. Ariz. 2023), Dkt. # 65, pg. 4 (emphasis added); *see also, e.g.*, *id.*, 2023 U.S. Dist. LEXIS 9117, Dkt. # 47, (denying motion to remand under CAFA exception because plaintiffs, who had the burden of proof, failed to provide evidence to demonstrate that more than two-thirds of the putative class members were Arizona citizens, despite the fact that most putative class members had Arizona addresses). Plaintiffs' appeal to the Ninth Circuit was denied. *Id.*, Dkt. # 67, Order (Ninth Circuit's denial of appeal regarding remand under CAFA exception).

41.     It would also frustrate the purposes of CAFA, waste judicial resources, and cause unnecessary expense to Fred Hutch to force it to litigate the same claims in two different forums: in state court and in federal court. *See, e.g.*, *Simon v. Marriott Int'l, Inc.*, No. PWG-19-1792, 2019 WL 4573415, at *2 (D. Md. Sep. 20, 2019) (denying remand where "federal jurisdiction already attached to two CAFA class actions" previously filed, while noting that CAFA does not permit plaintiffs to "splinter[] . . . a single lawsuit into multiple suits" or avoid federal jurisdiction through strategic pleading); *Sanders v. Kia Am. Inc.*, 2023 WL 3974966, at *4 (C.D. Cal. June 13, 2023)

(denying remand because plaintiffs "could not force litigation on the same claims in both state and federal court by divesting federal court of jurisdiction it had already acquired").

42. In short, "minimal diversity" is established pursuant to CAFA because at least one putative class member is a citizen of a state other than Washington, no evidence exists to suggest any of the exceptions to CAFA apply, and it would be unfair and inefficient to force Fred Hutch to litigate the same claims in two different forums.

**D. The amount in controversy exceeds the CAFA threshold[2]**

43. The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. *See* 28 U.S.C. § 1332(d)(2).

44. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) *quoting* S. REP. NO. 109-14, at 43 (2005). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89; *see also* 28 U.S.C. § 1446(c)(2)(B).

45. Courts may consider the combined total amount of alleged actual damages and punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). The amount in controversy also includes reasonable attorney's fees, if mandated or allowed by statute or contract. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees."). Finally, the costs of complying with an injunction may establish the amount in controversy. *See Morales v. Generix Labs, Inc.*, 2010 WL 11595740, at *3 (C.D. Cal. April 19, 2010) *citing In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("When a plaintiff

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

4856-9364-3930.1

seeks injunctive relief the amount in controversy may be calculated by assessing the cost to the defendant of complying with the injunction.").

46. Plaintiff requests the following relief, which, aggregated across the putative class that Plaintiff alleges to contain 800,000 individuals, places more than $5 million in controversy, exclusive of interests and costs: "Plaintiff, individually and on behalf of all members of the Class," seeks "declaratory relief," "permanent injunctive relief,", "compensatory, consequential, and general damages," (*id.*), "statutory damages, and treble damages,", "equitable relief … including, but not limited to, disgorgement and restitution,", and "attorneys' fees" (Compl., Prayer for Relief).

47. Based on plaintiffs' allegations related to damages and the size of the putative class, these alleged damages easily surpass the $5 million jurisdictional threshold.

48. For example, just the "credit monitoring services" requested by Plaintiff in her prayer for relief alone would cost many millions of dollars and easily satisfy the jurisdictional threshold. The three identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $9.95 to $24.99.[3] The cost of providing <u>one month</u> of credit-monitoring services at $9.95 per month (the cheapest credit-monitoring service) for 800,000 individuals is nearly $8 million. And this does not include damages for the other alleged "time and effort" that each putative class member is alleged to have spent. Even one hour per putative class member at the federal minimum wage exceeds $5 million.

49. Moreover, several putative class actions have been filed in federal court seeking to represent the same class and seeking substantially similar damages—and each of those cases alleges that the amount in controversy exceeds $5 million. (*See supra* ¶ 28.)

50. Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages (including statutory treble damages), punitive damages, injunctive or declaratory relief, or attorneys' fees, which would add even more to the total amount in controversy.

---

[3] Equifax, available at https://www.equifax.com/, last visited on Jan. 2, 2024; LifeLock by Norton, available at https://lifelock.norton.com/, last visited on Jan. 2, 2024; and Experian, available at https://www.experian.com/protection/identity-theft-and-credit-protection/, last visited on Jan. 2, 2024.

### IV. RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

51. Nothing in this Notice is intended or should be construed as an express or implied admission by Defendant of any fact alleged by Plaintiff, of the validity or merit of any of Plaintiff's claims and allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action.

### V. CONCLUSION

52. Defendant removes the State Court Action to the United States District Court for the Western District of Washington based on original jurisdiction under 28 U.S.C. § 1332(d).

53. Promptly after filing this Notice of Removal, Defendant will file a copy of it with the clerk of the state court in which this action is pending and will give written notice to counsel for Plaintiff, as required by 28 U.S.C. § 1446(d).

54. This Notice of Removal is submitted without waiver of any procedural or substantive defense that may be available to Defendant and without admitting any of the allegations contained within the Complaint.

Dated: January 8, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

/s/ Paul Bruene
Paul Bruene, WSBA # 52727
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
T: (206) 332-1380
F: (206) 624-7317
E: pbruene@bakerlaw.com

***Attorney for Defendant***
***Fred Hutchinson Cancer Center***

4856-9364-3930.1

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2024, I electronically filed the foregoing NOTICE OF REMOVAL with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for plaintiff. I further certify that I emailed the filings to the below counsel on January 8, 2024.

Kim D. Stephens
Cecily C. Jordan
TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
T:206--082-5600
F: 206-682-2992
kstephens@tousley.com
cjordan@tousley.com

*/s/ Paul Bruene*
Paul Bruene

13

4856-9364-3930.1